

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-1750
Re: Shall Comptroller issue
warrant in payment of
claim of American Nation-
al Bank for $8,861.62,
appropriated by Senate
Bill No. 179, Chapter
440, Acts Regular Session,
45th Legislature?

We have given careful consideration to the questions submitted by you in your letter of November 30, 1939. These questions are:

1. Is the appropriation available for the payment of the American National Bank claim?

2. If the appropriation is available, then is the Comptroller's Department legally authorized to issue warrant in payment thereof?

The history of the American National Bank claim is as follows:

One of the items in the Miscellaneous Claims Appropriation Bill, Senate Bill 179, Chapter 440, Acts 45th Legislature, reads as follows:

"To pay the American National Bank, of Austin, Texas, to reimburse said bank for money advanced for the construction of the Auditorium Building at Agricultural and Mechanical College, said building having been authorized by the Acts of the Thirty-fourth Legislature, First Called Session, 1915, page 104, and said sum being the unexpended balance of said appropriation----$8,861.62"

Section 5 of said Act provides in part as follows:

"It is specifically provided herein that before any claim shall be paid from funds hereby appropriated the same shall have the approval of the State Comptroller, the State Auditor and Efficiency Expert, and the Attorney General. It is further provided that any claim involving the refund of a franchise tax shall also carry the approval of the Secretary of State in addition to the other officials herein named."

The State Comptroller has never approved the payment of this claim. No warrant therefore has ever been issued. The preceding administration of the Attorney General's office first wrote an opinion, in August, 1937, holding the appropriation to pay the claim of the American National Bank to be unconstitutional, the effect of such opinion necessarily being to deny the existence of constitutional authority in the Attorney General, the Comptroller, and the State Auditor and Efficiency Expert to approve the payment thereof. A year later, by conference opinion No. 3022, dated August 22, 1938, addressed to the Honorable Tom C. King, State Auditor, the preceding administration of the Attorney General's office held the appropriation to be constitutional, and overruled the preceding opinion rendered by the administration, the effect of this opinion being only to hold that the Constitution of the State of Texas would not prevent the approval of the claim. This opinion of the Attorney General, however, did not approve the payment of the claim expressly.

The State Auditor and Efficiency Expert refused to approve the claim, and on November 8, 1938, the American National Bank, as relator, filed its petition for mandamus in the 98th District Court of Travis County, against Tom C. King, State Auditor and Efficiency Expert, only, seeking to have the court compel Tom C. King, State Auditor and Efficiency Expert, to approve the claim of the American National Bank. On December 19, 1938, the case was heard and the court ordered mandamus to issue against Tom C. King, State Auditor and Efficiency Expert, compelling him to approve the payment of such claim of the American National Bank. On the same day the Attorney General, representing the State Auditor, filed with the clerk of the court notice of appeal and request for findings of fact and conclusions of law. On February 16, 1939, transcript and statement of facts were filed with the Austin Court of Civil Appeals. On June 20, 1939, appellee, the American National Bank, filed its motion to dismiss the appeal on the grounds "that no notice of appeal in open court was ever given." The Court of Civil Appeals dismissed the appeal on July 12, 1939, for reasons stated in appellee's motion, and motion of appellant for rehearing was subsequently dismissed. It appears, therefore, that the judgment of the District Court granting mandamus to compel the State Auditor to approve the claim of the American National Bank has become final.

The question to be determined, therefore, is the effect of this final judgment upon the Attorney General, the State Comptroller, and the State of Texas. In other words, is the judgment of the District Court of Travis County, rendered in the suit against Tom C. King, State Auditor, determining the question of the constitutionality of the claim of the American National Bank, res adjudicata of such issue as against the State of Texas, the Attorney General, and the State Comptroller.

This question, we are convinced, must be answered in the negative.

"The key which unlocks the State Treasury is an act of the Legislature directing the thing to be done which is demanded." Treasurer v. Wygall, 46 Tex. at page 465. That which the State has set up as a condition precedent to the payment of a claim against it may not be

abrogated by the substitution of a new and different condition precedent.

Here the Legislature has seen fit to provide that the claim of the American National Bank may not be paid until three separate and distinct officers of the State government shall have approved it. The approval of one of these officers is not "the key which unlocks the State Treasury." The judgment of the court against Tom C. King is not binding on the Comptroller or the Attorney General, upon the fundamental principle of law that a judgment is not binding upon one who is not a party to the proceeding. Texas Jurisprudence, Vol. 26, pages 241-242. The judgment is not binding upon the State, because the State has not consented that it shall be represented in the matter of approving this claim by Tom C. King alone, but has stipulated that the approval thereof shall be by the three officials named, to-wit, the State Auditor, the Attorney General, and the Comptroller. The duty of approving or disapproving such claim rested upon all three officers, not upon one of them. Where performance of a duty is sought to be compelled by mandamus, all persons charged with the performance of that duty must be made parties. Gaal v. Townsend, 77 Tex. 464, 14 S. W. 365.

All parties charged with the duty of approving or disapproving the claim of the American National Bank were not made parties to the suit in the District Court of Travis County, but only Tom C. King, State Auditor, was a party to such suit, and judgment therein was rendered only against him. It is therefore apparent that the judgment of the court rendered in that case is not determinative of the issues involved as against the State Comptroller, the Attorney General, or the State of Texas.

Having determined that the judgment rendered by the District Court of Travis County is not binding upon the State of Texas, or the Comptroller or the Attorney General, we pass to the question of whether your department is legally authorized to issue a warrant in payment of this claim. This question involves determining whether the Comptroller and the Attorney General may constitutionally approve the payment of this claim.

The facts under which the alleged claim of the American National Bank arose are these:

Chapter 32, Acts of the First Called Session of the 34th Legislature of Texas, in 1915, appropriated, for the "fiscal biennium beginning September 1, 1915, and ending August 31, 1917," $100,000.00 "or so much thereof as may be necessary" for the construction of an auditorium at A. & M. College (page 104). On November 29, 1916, the Board of Directors of A. & M. College enter-ed into a contract with Ledbetter & Greathouse of Austin, Texas, for the erection of such auditorium at a contract price of $91,138.38. On April 6, 1917, the United States declared war on Germany. In the spring of 1918, Ledbetter & Greathouse defaulted in the performance of their contract, and the sureties on their bond refused to proceed with the construction of the building, claiming that the war had so increased costs of labor and materials as to make it im-possible to complete the contract for construction of the building at the contract price, without suffering a loss, and that this fact relieved them from performance. There-after, several members of the Board of Directors of A. & M. College and a representative of the Governor of Texas prevailed upon Major Littlefield, President of the Amer-ican National Bank, to advance sufficient moneys to enable Ledbetter & Greathouse to complete the building without suffering a loss, representing to Major Littlefield that there was an unexpended balance of the $100,000.00 appropria-tion which they could not expend without consent of the Legislature, but that they would recommend that the Legislature reimburse the bank for the money advanced. Such money was advanced by the bank in the sum of approximately $23,000.00, by which the building was completed by Ledbetter & Greathouse in accordance with the plans and specifications embodied in the original contract.

The inability of the Legislature, under restraint of the constitution, to appropriate anything in payment of this account over and above $8,861.62, is conceded; but it is contended that at the time this agreement was had with Major Littlefield, there was an unexpended balance in the $100,000.00 appropriation of $8,861.62, and that, by "rati-fication" by the Legislature of the agreement made with Major Littlefield, within the limits of the amount pre-scribed by the "pre-existing law", to-wit. the 1915 ap-

propriation, the payment of the claim to the extent of
$8,861.62 escapes the condemnation of the constitution.

By the 45th Legislature, there was appropriated
this sum of $8,861.62, payment of which was authorized to
be made only upon the condition hereinabove noted.

It will be observed that Article VIII, Section
6, of our constitution limits appropriations to terms not
exceeding two years. It will likewise be observed that
the $100,000.00 appropriation was made available for ex-
penditure for the fiscal biennium "ending August 31,
1917." The Legislature did not vest the Board of Regents
with a continuing authority to contract for expenditure of
the $100,000.00, but only with authority to contract with
reference thereto during the period for which the appropria·
tion was made. Conceding, for the purposes of this opinion,
that on August 31, 1917, $8,861.62 of the original appro-
priation remained unencumbered, nevertheless, by virtue of
the provisions of the constitution and of the appropriation
bill itself, the unobligated or unencumbered portion of the
$100,000.00 appropriation lapsed, and the authority to con-
tract with reference to it culminated on September 1, 1917.
At the time the contract or agreement with reference to
such unexpended balance was had, the unexpended portion
of the appropriation was no longer available, and the auth-
ority to contract with reference to it had expired. It is
clear, therefore, that the agreement upon which the claim
for $8,861.62 was founded was not authorized to be made
upon an appropriation in existence at the time of the incur-
ring of the claim; that the authority of the officers in-
volved to bind the State by contracts for the construction
of the auditorium had expired with the appropriation which
had conferred it. It is apparent, therefore, that the
agreement was an attempt on the part of such officials
to create a debt against the State, without authority
conferred by pre-existing law.

As a matter of fact, at the time this agreement
was made, there was in existence and in full force and ef-
fect a law passed by the Legislature, to-wit, Senate Bill
No. 29, enacted by the First Called Session of the 33rd
Legislature, approved August 19, 1913, the provisions of
which were as follows:

"Section 1. That it shall hereafter be unlawful for any regent, or regents, director or directors, officer or officers, member or members, of any educational or cleemosynary institution of the State of Texas, to contract or provide for the erection or repair of any building, or other improvement or the purchase of equipment or supplies of any kind whatsoever for any such institution, not authorized by specific legislative enactment, or by written direction of the Governor of this State, acting under and consistent with the authority of existing laws, or to contract or create any indebtedness or deficiency in the name of or against the State, not specifically authorized by legislative enactment. . . .

"Section 2. That any and all contracts, debts or deficiencies created contrary to the provisions of this Act shall be wholly and totally void and shall not be enforceable against the State."

Section 3 of said Act provided that for a violation of its provisions the offender should be removed from office, and should, in addition, be punished by imprisonment in the county jail for not less than 10 days nor more than six months.

Section 49, Article III, of the constitution provides that "no debts shall be created by or on behalf of the State, except to supply casual deficiencies of revenue, repel invasion, suppress insurrection, defend the State in time of war, or pay existing debts; . . . . . ."

Article III, Section 44, of the constitution provides that "The Legislature . . . shall not grant extra compensation to any . . . public contractors, after . . . contract entered into, for the performance of the same; nor grant, by appropriation or otherwise, any amount of money . . . to any individual, on a claim, real or pretended, when the same shall not have been provided for by pre-existing law; . . . ."

The validity and applicability of the proposition stated below with reference to the creation and

attempted payment of this claim are evident:

### 1. Creation of debt.

(a) The Legislature may not create or author-ize the creation of a debt against the State, except for purposes which do not include the situation before us.

(b) The agreement with the American National Bank was an unauthorized attempt to create a debt or liability against the State, and was void from its in-ception both by virtue of the constitutional provision and by virtue of the express provisions of the statutes above quoted.

(c) Ratification may not create a liability against the State in the face of a constitutional provision denying the liability and prohibiting the Legislature from recognizing such claim.

### 2. Extra compensation to public contractor.

(a) The Legislature is without power to allow extra compensation to a public contractor for completing the performance of a contract entered into between the contractor and the State.

(b) What the Legislature is without power to do directly may not be accomplished by indirection.

The purpose and effect of the agreement made be-tween the state officers and the American National Bank were the allowance of additional compensation to Ledbetter & Greathouse to induce them to complete a contract already entered into and partly performed, according to its terms and specifications.

### 3. Payment of claim not authorized by pre-existing law.

(a) The constitution denies the existence of power in the Legislature to pay "by appropriation or otherwise" a "real or pretended" claim "not . . . provided for by pre-existing law."

(b) The Legislature may not pay a claim unless there existed at the time the facts upon which the claim

Honorable Geo. H. Sheppard, page 9


is founded occurred a law recognizing that such facts impose a valid and subsisting obligation upon the State.

(c) All persons dealing with public officers are charged with knowledge of the limitations upon their authority, and claims arising upon contracts or agreements which public officers lack authority to make impose no obligation upon the State which may be recognized and paid by the Legislature.

(d) The claim of the American National Bank is founded upon a contract or agreement made by public officers without authority, there being no law vesting such officers with authority to borrow money in behalf of the State, and their authority to contract with refe-ence to the $100,000.00 appropriation having expired at the time of the agreement with the American National Bank, and the statutes in existence at that time having specifically denied such authority and provided that such contract should be utterly void and unenforceable against the State.

The foregoing propositions are amply supported by the following cases:

> State v. Wilson, 71 Tex. 291, 9 S. W. 155
> Corsicana Cotton Mills v. Sheppard, 71 S.
>     W.(2d) 247
> Austin National Bank v. Sheppard, 71 S.
>     W.(2d) 242
> Ft. Worth Cavalry Club v. Sheppard, 83
>     S. W. (2d) 660
> State v. Ferlstein, 79 S. W. (2d) 143
> — Nichols v. State, 32 S. W. 452
> State v. Haldeman, 163 S. W. 1020
> Conference Opinion by C. W. Taylor,
>     approved by C. M. Cureton, Attorney
>     General, Opinion Book 52, page 20
> Hooe v. United States, 218 U. S. 320,
>     54 L. Ed. 1055
> — Gordon v. State, 233 N. Y. 1, 134 N. E.
>     698, 21 A. L. R. 562
> Mulnix v. Mutual Benefit Life Ins. Co.
>     (Colo.) 33 L. R. A. 827

The following language quoted from portions of the opinion in the case of Gordon v. State, cited supra, is particularly applicable to the facts of this case:

"The contract of November 10, 1915,
between claimant and the State, was executed
after claimant, in competition with other
contractors, had submitted a proposal for
a performance of the work therein specified
to be performed and the labor and material
necessary to complete the same. Claimant
was a contractor, and familiar with the
nature of the work to be performed, the cost
of labor and materials necessary to complete
the specified work, and the time within which
the same could be completed. Engaged in a
hazardous business, claimant was chargeable
with knowledge of the legal obligation im-
posed upon a party to a contract to perform
his covenants, and liability to respond in
damages in the event of nonperformance, and
that a like obligation rested upon the state.
We may also attribute to claimant, as a busi-
ness man and contractor, knowledge of the
increasing abnormal conditions existing at
the time of the execution of the contract.
The powers of Europe had for some time prior
to November 10, 1915, been and were then en-
gaged in war. Some five months previously
the aggressor had ruthlessly caused the
death of American citizens and helpless
children upon the high sea, and the fact
was apparent that the United States could
not, in the interest of humanity and as a
measure of self-protection, long delay
participation in the war in aid of the forces
opposed to the aggressor. A continuance of
the war, and particularly the entry of this
country into the conflict, would necessarily
result in scarcity of labor, increased cost
of the same, and increased cost of material,
with continued business depression. Confronted
with that condition and outlook, claimant pro-
posed to undertake the work under the contract.
To say that he did not appreciate the risk, and
that his proposal to perform the work was
not made in contemplation of the abnormal
conditions then extant and danger of an in-
crease of the same, would be a serious re-
flection upon his sagacity as a business
man. The unit prices to be paid by the
state for labor and material were fixed by
claimant in his proposal. As a contractor

he was aware of the prevailing cost of labor
and materials, and was qualified to anticipate
the conditions likely to arise during the term
of the contract. At least, he undertook and
was willing to do so, and to give a bond to
secure performance on his part. Having entered
into the contract, claimant became legally
and equitably bound to discharge the obligation
assumed by him, however onerous the burden.
Borst v. L. Vogelstein & Co. 188 App. Div.
605, 611, 177 N. Y. Supp. 402; Columbus
R. Power & Light Co. v. Columbus, 249 U.
S. 399, 63 L. Ed. 669, 6 A. L. R. 1648,
P. U. R. 1919D, 239, 39 Sup. Ct. Rep. 349.
Failure or refusal on the part of the claim-
ant to perform the contract would vest in
the state a cause of action for damages
against him, and to such action a defense
that by reason of war conditions the cost
of labor and materials had increased, render-
ing the contract a loss to him, would be
unavailing.

".......Equity and justice do not
require the state to reimburse a contractor
for the increased expense incurred by him
in the performance of a contract due in no
measure to the act of the state. The claimant
assumed the risk incident to the performance
of his contract. Had the cost of labor and
materials decreased rather than increased,
the state, under the contract, would still be
obligated to pay the unit prices it covenanted
to pay, and equity and justice would turn a
deaf ear to a suggestion by the state that
the expense to claimant had been materially
reduced, his anticipated profits thereby
largely increased, and therefore a moral
obligation existed upon his part to reduce
the cost to the state.

"The state did not undertake to indemnify
claimant against loss upon his contract. On
the contrary, it required him to give a bond for
a strict compliance on his part with the terms

of the same. War conditions and the increased
cost of labor and materials or scarcity of
labor were not precipitated by the state or
due to any act upon its part. So far as
the record discloses, the state performed
every obligation resting upon it under the
contract. The contract between the claimant
and the state was purely a business transac-
tion akin to contracts between individuals.
Undoubtedly claimant anticipated a profit
would result from his contract. If disap-
pointed and a loss resulted, he assumed the
risk of such loss and to bear the same. A
contribution to him and other contractors
similarly situated by the taxpayers of the
state under the State of 1919, or in what-
ever form framed, would operate as a dispen-
sation of charity.

"....

"The commission created in 1872 reported
to the legislature certain proposed constitu-
tional amendments, which, after due action
thereon on the part of the legislature, were
ratified by the people at a general election
in 1874, and became effective January 1,
1875.

"One of the amendments adopted under a
different numbering was § 28 of article 3
as it exists today, and reads as follows:
'The legislature shall not, nor shall the
common council of any city, nor any board
of supervisors, grant any extra compensation
to any public officer, servant, agent, or
contractor.'

"By the adoption of that provision
of the Constitution, the legislature was
thereafter inhibited from appropriating money
based upon gratitude and charity, so far as
its officers, servants, agents, and contrac-
tors were concerned.

"In discussing the effect of the section of the Constitution quoted, amongst others, Judge Martin, writing for this court in Stemmler v. New York, 179 N. Y. 473, 483, 72 N. E. 584, said: 'Since those amendments to the Constitution, their effect has often been the subject of judicial construction by this and other courts in the state. Although we are not unmindful of the decisions of this court anterior to their adoption, and realize that the broad doctrine was then held that the legislature was not confined in its appropriation of public money, or of sums to be raised by taxation in favor of individuals, to cases where a legal demand existed, and that it could thus recognize claims founded upon equity and justice, yet, since the amendments, that rule has been changed, and they have eliminated all considerations of gratitude and charity as grounds for the appropriation of public money, except for the aid and support of the poor.'

"The construction thus placed upon the section of the Constitution has not been departed from or modified. The legislature, thus prohibited from recognizing claims founded on gratitude and charity, was powerless to indirectly provide a means of determining such claims, provide for the entry of judgment thereon against the state, and to subsequently appropriate moneys to pay the judgment.

"The State of 1919 in effect and substance provides for the payment of compensation to contractors over and above that fixed by contract when the services were rendered, and therefore a grant of extra compensation within the prohibition of the Constitution. The fact that the court of claims was authorized to hear and determine the claim does not render the statute valid. Payment of judgments rendered by that court is provided for by appropriation of the funds of the state, and a judgment in favor of claimant in this case, for increased cost of labor and material in excess of the amount specified to be paid

in the contract, would clearly fall within
the term 'extra compensation.'

The following quotation is taken from the case
of Nichols v. State, cited supra:

"Ratification or implied liability
will not extend to acts that are express-
ly prohibited by law, so long as the law
is alive that prohibits the act.  Riechard
v. Warren Co., 31 Iowa 390; Brady v.
Mayor, et cetera, 20 N. Y. 312.  You can-
not indirectly, by ratification, create
a liability against the state, when the
constitution denies the liability, and
prohibits the Legislature from giving any
vitality to such a plan.  To permit
liability to be created under such
circumstances would be to nullify the
constitution, and to authorize the ac-
complishment in an indirect way of the
thing that is expressly prohibited."

For the reasons stated, we are constrained to
hold that the Comptroller and the Attorney General are
without constitutional authority to approve the payment
of this claim and that your department is not legally
authorized, under the constitution, to issue a warrant
in payment thereof.  Conference opinion No. 3022, written
by the preceding administration of the Attorney General's
Department of the State of Texas, addressed to the Honorable
Tom C. King, State Auditor, Austin, Texas, under date of
August 22, 1938, and found in the reports and opinions of
the Attorney General of Texas for the years 1936-1938,
inclusive, on page 171, is hereby expressly overruled.

Since the appropriation providing for the payment
of this claim is condemned by the constitution, and there-
fore void, it follows that no appropriation is available
for the payment of the claim of the American National Bank,
for, clearly, an appropriation is not to be considered as
available in law unless that appropriation is validly made.

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED JAN 27, 1940

Gerald C. Mann

ATTORNEY GENERAL OF TEXAS

By Richard W. Fairchild

THIS OPINION CONSIDERED AND APPROVED IN LIMITED CONFERENCE